Dear Representative Johns:
You have requested an opinion of the Attorney General on the question of what specifications may be used to qualify or disqualify an engine in the purchase of a school bus made by a political subdivision pursuant to the Louisiana Public Bid Law. Your opinion request attaches a letter from Atterberry Truck Sales, Inc. describing therein the rejection of its school bus bid by the local school board. Atterberry alleges that its bid was rejected by the school board due to its submittal of a bus bid containing a V type engine rather than an Inline engine as set out in the bid specifications.
The Public Bid Law (LSA-R.S. 38:2211-2296) applies to all public school boards. Under the public bid law contracts for the purchase of material and supplies exceeding $20,000 must be advertised and let by contract to the lowest responsible and responsive bidder. Contracts for purchases of materials and supplies costing $10,000 or more, but less than $20,000, must be made by obtaining no fewer than three telephone or fax quotations on the same specifications for the desired purchase. R.S.38:2212.1A(1)(a) (b). There are no provisions which set forth procurement requirements for smaller purchases.
The purchase of a school bus by a local school board would be considered a purchase of materials and supplies requiring compliance with the bid law. When a public entity desires to purchase certain types of equipment or machinery, such as school buses, the entity may set minimum requirements in its bid specifications which must be met in order for a bidder to be deemed responsive. However, such specifications must comply with the Public Bid Law and specifically LA. R.S. 38:2212.1(C) which states as follows:
 2212.1 Advertising and letting to lowest responsible bidder; materials and supplies
C. (1) Whenever a public entity desires to purchase technical equipment, apparatus, machinery, materials, or supplies of a certain type and such purchases are clearly in the public interest, the public entity may specify a particular brand, make, or manufacturer in the specifications let out for public bid as provided by this Part. If a particular brand, make, or manufacturer is specified, the model or catalog number also shall be specified.
(2) Wherever in specifications the name of a certain brand, make, manufacturer, or definite specification is utilized, the specifications shall state clearly that they are used only to denote the quality standard of product desired and that they do not restrict bidders to the specific brand, make, manufacturer, or specification named; that they are used only to set forth and convey to prospective bidders the general style, type, character, and quality of product desired; and that equivalent products will be acceptable.
In State Machinery Equipment Sales, Inc. v. LivingstonParish Gravity Drainage, 98-1207 (La.App. 1 Cir. 6/25/99),742 So.2d 26), the First Circuit reviewed a public bid for the lease purchase of a hydraulic excavator. The specifications issued by the public entity related to specific engine displacement, hydraulic system, undercarriage requirements, and operating data. The low bid was rejected by the public entity as being non-responsive for several reasons, one of which was that the bid specifications required a "wet sleeve" engine which was not the engine type submitted by the low bidder. In finding that the public entity violated the public bid law by the inclusion of a closed specification the First Circuit cited LouisianaAssociated General Contractor, Inc. v. Calcasieu Parish SchoolBoard, 586 So. 2d 1354 (La. 1991) which stated:
 In the area of product specifications, the emphasis in the statutory language and the case law is on the quality of product or material. Under the Public Bid Law, a public entity is allowed, subject to certain statutory restrictions, to specify a particular quality of product desired. A public entity may not impose a product specification which suppresses competition by eliminating products of equal quality.
 Specifications should be drafted so that the goods or services desired are definitively set forth and yet not be so restrictive as to eliminate competition. Great case must be taken to see that specifications are property tailored so that the ultimate goal of the system (to promote competition) is not lost. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d at 1365-66.
While it is clear that the Public Bid Law allows the school board to designate a specific type of engine or denote a specific brand name or model number in its specifications or that certain performance standards be met such a designation may only be used to designate the quality of the product sought and the bid specifications must state that products of similar quality are acceptable. The public entity must be fair in evaluating similarly bid products and must not exclude products that are functionally equivalent to the ones described in the specifications. This does not mean that any non-named product must be accepted but only that those products that are functionally equivalent should be considered. In other words, a public entity has the right to set certain performance standards that must be met to be a responsive bidder but such standards must be fair and reasonable.
Louisiana follows the general rule that an awarding body is vested with much discretion in the interpretation of its specifications and the courts will not substitute their judgment for the good-faith judgment of the awarding body as long as the awarding body's administrative discretion is exercised in a fair and legal manner and is not arbitrary. See Haughton ElevatorDivision v. State of Louisiana, 367 So.2d 1161, (La. 1979). In other words, a governing authority that is charged with awarding contracts pursuant to Louisiana's public bid law has the discretion to interpret the specifications it sets out in the bidding document, and this interpretation of its own specifications should not be disturbed upon judicial review absent a showing that the governing authority abused its discretion.
Whether a V type engine meets the type, quality or performance standards set forth in the school board bid specifications and are functionally equivalent to the specified lnline engine and thus responsive to the bid is a factual determination that must be initially made by the school board subject to judicial review.
It is therefore the opinion of this office that a public entity, such as a school board, may set out certain bid specifications describing the quality, performance or type of engine sought in the purchase of a school bus but that any such specification must allow for a functionally equivalent equal and that the interpretation of its bid specifications must be exercised in a fair and legal manner and may not be arbitrary.
We trust that this answers your inquiry.
Very truly yours,
CHARLES C. FOTI, JR. ATTORNEY GENERAL.
BY: _______________________________ RICHARD L. McGIMSEY Assistant Attorney General